[No. B016404. Second Dist., Div. Seven. Aug. 26, 1986.]

RUTH M. TUNIS, Plaintiff and Respondent, v.
ROY BARROW et al., Defendants and Appellants.

**COUNSEL**

Nissenberg & Nissenberg and David N. Nissenberg for Defendants and Appellants.

Dominick Nardelli for Plaintiff and Respondent.

**OPINION**

**LILLIE, P. J.**—Defendants appeal from order denying their motion to vacate default judgment and order denying motion for rehearing.

## Factual and Procedural Background

In December 1982 Ruth Tunis purchased a 1980 Trailmobile double-drop low-bed trailer from Roy Barrow, paying him $17,380.75. Barrow promised Tunis he would deliver the pink slip to her in short order. Unknown to Tunis, the trailer was subject to a lien in favor of Trailmobile, Inc., the manufacturer. Barrow gave his attorney, James Campbell, $14,500 of the purchase price paid by Tunis with the understanding that Campbell would pay that sum to Trailmobile in return for the pink slip. Campbell assured Barrow he would have the pink slip by Friday of the week the sale was made, and Barrow so informed Tunis. The pink slip was not obtained.

In July 1983 Tunis sued Barrow for breach of contract and fraud based on his failure to deliver title to the trailer. Plaintiff sought compensatory damages not less than $19,880.75 (purchase price of trailer plus cost of improvements thereon made by plaintiff) and punitive damages not less than $100,000. In August 1983 a first amended complaint was filed adding as defendants BHY Equipment Sales, Inc., and BHY Trucking, Inc., domestic corporations.[1]

Summons on the first amended complaint was issued August 19, 1983.

On October 27, 1983, upon plaintiff's showing of inability to effect personal service on the corporate defendants, the court ordered that plaintiff be allowed to serve such defendants by service on the secretary of state. (Corp. Code, § 1702.) Service on the corporate defendants was made November 7, 1983, by delivering to the secretary of state, on behalf of each defendant, copies of the summons and first amended complaint.

On October 31, 1983, plaintiff procured issuance of an ex parte writ of attachment covering proceeds in escrow payable to defendant Barrow in connection with the sale of his home in Fountain Valley. On November 2, 1983, pursuant to the writ, the sheriff of Orange County received from the escrow company the sum of $19,880.75. On the same date the sheriff delivered to Campbell, as Barrow's attorney, copies of the writ, the summons and the first amended complaint.

On December 29, 1983, plaintiff applied for an order permitting service on Barrow by publication, based on the following showing: Plaintiff attempted unsuccessfully to effect personal service on Barrow; the escrow office refused to reveal his whereabouts; in November 1983 attorney Camp-

---

[1]It was alleged that Barrow transacts business as BHY Equipment Sales. He is a corporate officer of each of the defendant corporations.

bell informed plaintiff's counsel that Barrow was in the process of moving; when asked whether he would be willing to give plaintiff Barrow's new address when he obtained it, Campbell avoided giving a direct response; he said he was authorized to accept service on Barrow's behalf but failed to provide plaintiff with documentation of such authority.

Pursuant to order of the court, Barrow was served with summons by publication thereof in the Los Angeles Daily Journal once a week for four successive weeks. (See Code Civ. Proc., § 415.50; Gov. Code, § 6064.)

The clerk entered the defaults of the corporate defendants February 3, 1984, and the default of defendant Barrow April 25, 1984. Copies of the requests to enter default were mailed to James Campbell.

On June 11, 1984, following a hearing and review of documentary evidence, the court entered default judgment against defendants for $41,325.65, consisting of $19,880.75 compensatory damages, $1,564.15 interest thereon, and $19,880.75 punitive damages.

Campbell did not inform Barrow of the existence of the action filed by plaintiff. In January 1985 another attorney, a friend of Barrow who had handled several of his business affairs, informed him of the action and the default judgment entered therein. Upon learning of the judgment Barrow asked Campbell to take immediate steps to set it aside; Campbell assured Barrow that he would file a motion to vacate the judgment, but did not do so. In April 1985 Barrow dismissed Campbell and retained other counsel.

On May 28, 1985, defendants moved to vacate default judgment on the ground that defendants did not receive actual notice of plaintiff's action in time to defend it (Code Civ. Proc., § 473.5), and on "equitable grounds." The motion was denied June 19, 1985. On July 30, 1985, defendants moved for rehearing of their motion to vacate default judgment on the ground of new facts unknown to defendants at the time of hearing on that motion. On August 23, 1985, the motion for rehearing was denied.

On September 13, 1985, defendants filed notice of appeal from order denying their motion to vacate default judgment and order denying motion for rehearing.

## DISCUSSION

### I

#### APPEALABILITY OF ORDERS AND TIMELINESS OF APPEAL

A. *Order Denying Motion to Vacate Default Judgment*

██ Inasmuch as Code of Civil Procedure section 473.5 makes express provision for a motion to vacate a default judgment, an order denying such

motion is appealable. (See *Winslow* v. *Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, 282 [153 P.2d 714]; *In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836 [123 Cal.Rptr. 213]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 114, pp. 130-131.) ▆ A notice of appeal must be filed ". . . within 60 days after the date of service of written notice of entry of judgment by any party upon the party filing the notice of appeal, or within 180 days after the date of entry of the judgment," whichever is earlier. (Cal. Rules of Court, rule 2(a).) In the present case the 60-day period began to run on June 21, 1985, when plaintiff mailed to defendants notice of ruling on the motion to vacate default judgment.[2] (See *Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1010 [183 Cal.Rptr. 594].) The notice of appeal was filed more than 60 days later, on September 13. However, for the purposes of rule 3, California Rules of Court, a motion for reconsideration has the same effect as a motion for new trial or a motion to vacate, i.e.: the timely filing of a motion to reconsider extends the time for filing of notice of appeal from the original ruling until 30 days after entry of the order denying reconsideration. (*Id.*, at pp. 1009-1010.) ▆ ▆▆▆▆ ▆ Defendants' motion for rehearing was in essence equivalent to a motion for reconsideration and was timely filed on July 30, 1985, within the 60-day period for appeal from the order denying motion to vacate default judgment.[3] (See rule 3(b), Cal. Rules of Court.) Accordingly, defendants' appeal from that order, filed within 30 days after entry of the order denying motion for rehearing (reconsideration), was timely.

## B. *Order Denying Motion for Rehearing*

▆ Treated as a motion for reconsideration under Code of Civil Procedure section 1008, defendants' motion for rehearing is appealable as an order made after the final and appealable order denying motion to vacate default judgment. (See *Blue Mountain Development Co.* v. *Carville, supra,* 132 Cal.App.3d 1005, 1010-1011.) However, "[e]ven though the original ruling

---

[2]While the proof of service by mail describes the document served as "Notice in Error in Service of Papers in Particular the Complaint on the Defendant," it is apparent from the date of the notice of ruling and the date on proof of service (both June 21, 1985) that the document served was the notice of ruling.

[3]Code of Civil Procedure section 1008, subdivision (a) provides: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, *within ten (10) days after knowledge of the order* and based upon an alleged different state of facts may [*sic*], make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order." (Italics added.)

While defendants' motion for rehearing was filed July 30, 1985, well beyond the 10-day period specified in section 1008, it was timely under that statute as well as under rule 3, for such 10-day period is not conclusive provided that relief is sought within a reasonable time, in no case exceeding 6 months after the order is entered. (*Phelps* v. *Superior Court* (1982) 136 Cal.App.3d 802, 815 [186 Cal.Rptr. 626].)

was embodied in an appealable order, an order denying reconsideration may still not be appealable if the reconsideration motion was based on exactly the same showing offered in support of the original application. [Citations.]" (*Id.,* at p. 1011.)

In support of the motion for rehearing defendants argued that plaintiff would be unjustly enriched if she were allowed to recover compensatory damages representing the value of the trailer and also retain possession of the trailer. This argument was by no means new, and the record shows that defendants knew plaintiff retained the trailer when they moved to vacate default judgment. Thus, in their verified proposed answer to first amended complaint, submitted with motion to vacate, defendants alleged as an affirmative defense that plaintiff "has failed and refused to return the trailer to defendants' custody and possession and is thereby being unjustly enriched by virtue of her retention of defendants' trailer"; and in his declaration in support of motion to vacate, Barrow stated that "Mr. and Mrs. Tunis still retain possession of the trailer even though they have received their money back. . . . [¶] . . . I feel that the parties have been returned to the position that they were in prior to the transaction except that I expect Mrs. Tunis [plaintiff] to return the trailer to me."

The motion for rehearing was based on defendants' discovery of facts which arose after hearing on the motion to set aside default judgment, which took place June 14, 1985. The declaration of defendants' attorney in support of the motion for rehearing stated: On June 18, 1985, declarant learned that plaintiff planned to sell the trailer at an auction to be conducted June 20; on June 26 declarant was informed that the trailer had not been sold and was still in plaintiff's possession; defendants expected that plaintiff would redeliver the trailer to them and did not know she claimed to own the trailer until she offered it for sale. The only "new" fact set forth was that plaintiff claimed ownership of the trailer as evidenced by her attempt to sell it. However, as the declaration further discloses, the trailer was not sold and plaintiff continued to retain possession of it, just as she did at the time of hearing on the motion to vacate default judgment.

The contemplated sale of the trailer upon which defendants relied was a new fact only in the sense it did not occur until after hearing of the motion to vacate; it added nothing to the preexisting fact (known by defendants when they moved to vacate) that plaintiff retained possession of the trailer. Under these circumstances, the order denying motion for rehearing is not appealable and the purported appeal therefrom is dismissed.

## II

### PROPRIETY OF ORDER DENYING MOTION TO VACATE DEFAULT JUDGMENT

Code of Civil Procedure section 473.5 provides that "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him . . .," he may move to set it aside if he acts within two years after entry of the default judgment and shows that his ". . . lack of actual notice in time to defend the action was not caused by his avoidance of service or inexcusable neglect." In *Rosenthal* v. *Garner* (1983) 142 Cal.App.3d 891 [191 Cal.Rptr. 300], this court (Division Seven of the Second District) construed section 473.5 "to mean what it says when it refers to *actual* notice" and "reject[ed] the notion that there is an identity of attorney and client so as to invariably impute to a client the attorney's inaction concerning his notice of new litigation to which the client is an unknowing party defendant." (*Rosenthal, supra,* 142 Cal.App.3d at p. 895, original italics.)

In denying defendants' motion to vacate default judgment, the trial court determined that defendants received actual notice of the existence of plaintiff's action through attorney Campbell, who was "acting for [Barrow] in dealing with plaintiff concerning the within action" and was not discharged by Barrow until April 1985. The court distinguished *Rosenthal* on the ground that there the defendant's attorney represented him in an action prior to the one wherein default judgment was entered against him. The difference in the respective positions of the attorneys is irrelevant. Under section 473.5, as construed in *Rosenthal,* a defendant's right to relief from a default judgment initially turns on whether or not he had actual notice of the action in which the judgment was entered against him. The phrase "actual notice" in section 473.5 "means genuine knowledge of the party litigant and does not contemplate notice imputed to a principal from an attorney's actual notice." (*Rosenthal* v. *Garner, supra,* 142 Cal.App.3d 891, 895.) In his declaration in support of the motion to vacate default judgment, Barrow conceded that the escrow company informed him of the attachment of his funds in escrow; however, he further stated that when he asked Campbell about the attachment, Campbell said that plaintiff was allowed to "file a lien" against the escrow funds without filing a lawsuit. The evidence is uncontradicted that while Campbell had notice of the action he never informed Barrow of its existence and that Barrow did not learn of the action through any source until January 1985, six months after entry of default judgment therein.

A defendant seeking vacation of a default judgment entered against him must further show that his lack of actual notice in time to defend the action

was not caused by his inexcusable neglect or avoidance of service. (See Code Civ. Proc., § 473.5, subd. (c).) ■ Defendants recognize the general rule that neglect of the attorney is imputed to his client and may not be offered by the latter as a basis for relief (*Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61]), but argue that in the present case the following exception applies: "'[E]xcepted from the rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct*, and the person seeking relief is relatively free from negligence. [Citations omitted.] The exception is premised upon the concept the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship*, and for this reason his negligence should not be imputed to the client.' (Italics added.) [Citations.] Courts applying that exception have emphasized that '[a]n attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action or defense.' [Citations.]" (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775].)

■ The facts of the present case bring it within the foregoing exception to the general rule. In support of their motion to vacate default, defendants made the following showing which was uncontradicted:[4] Barrow asked Campbell, his attorney, to follow through in obtaining the pink slip for the trailer which he sold to plaintiff; Campbell assured Barrow that he would do so; he constantly told Barrow that the matter of the pink slip had been cleared up, or was about to be cleared up, and Barrow relied on those statements; the instant action grew out of plaintiff's failure to receive the pink slip; in November 1983 the sheriff delivered to Campbell copies of the summons, first amended complaint and writ of attachment issued in that action; Campbell not only failed to inform Barrow of the existence of the action but in effect actively concealed it by telling Barrow that plaintiff could attach his funds in escrow without suing him. Campbell's conduct simulated rejection of the attorney-client relationship without Barrow's knowledge, and his failure to advise Barrow of the existence of the action constituted positive misconduct within the exception to the general rule heretofore noted. (See *Buckert* v. *Briggs, supra,* 15 Cal.App.3d 296, 301-302.) Accordingly, "not only is notice to [Campbell] not to be imputed to [Barrow] but neither is the asserted inexcusable neglect of [Campbell] in failing to communicate with [Barrow] about the filing of this litigation." (*Rosenthal* v. *Garner, supra,* 142 Cal.App.3d 891, 897.)

Plaintiff notes that in order to obtain relief from default judgment under section 473.5 a defendant is further required to show that his lack of actual

---

[4]The record on appeal contains no declarations submitted by plaintiff in opposition to the motion.

notice of the action was not caused by his avoidance of service, and argues that Barrow failed to make such a showing. We do not agree. While Barrow left California twice in 1983, returning from the second trip in September, he told Campbell where he could be reached. In October 1983 Barrow sold his home and thereafter moved to Oregon. Before the close of escrow the escrow company informed him of the attachment of $19,800 of his funds in escrow. Barrow told Campbell he needed those funds; Campbell replied that he would send Barrow a certified check for $19,800 from the money in his client's trust account or would hand-deliver the check to Barrow in Oregon. It thus appears that Barrow did not conceal his whereabouts from Campbell and that the latter at all times knew where to reach him. In any event, since Barrow did not know of the existence of the within action, it cannot be said that his absences from California, and his ultimate move from that state, were motivated by a desire to avoid service.

■ "Where, as here, the trial court denies the motion for relief from default, the strong policy in favor of trial on the merits conflicts with the general rule of deference to the trial court's exercise of discretion. [Citation.] Unless inexcusable neglect is clear, the policy favoring trial on the merits prevails. [Citation.] Doubts are resolved in favor of the application for relief from default [citation], and reversal of an order denying relief results [citation]." (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 235 [211 Cal.Rptr. 416, 695 P.2d 713].) In view of these principles, the order denying motion to vacate default judgment must be reversed as to defendant Barrow.

■ A different result obtains as to the corporate defendants, BHY Equipment Sales, Inc., and BHY Trucking, Inc. Pursuant to Corporations Code section 1702, those defendants were served with copies of the summons and first amended complaint by service on the Secretary of State. Section 1702, subdivision (b) requires the Secretary of State to give notice of the service of process to the corporation.[5] The declarations in support of the motion to vacate default judgment not only fail to show that the corporate defendants did not receive such notice from the Secretary of State, but make no mention of those defendants at all with the exception of Barrow's statement that he is "a corporate officer of the corporate defendants." ■ The

---

[5]Corporations Code section 1702, subdivision (b): "Upon the receipt of any such copy of process and the fee therefor, the Secretary of State shall give notice of the service of the process to the corporation at its principal executive office, by forwarding to such office, by registered mail with request for return receipt, the copy of the process or, if the records of the Secretary of State do not disclose an address for its principal executive office, by forwarding such copy in the same manner to the last designated agent for service of process who has not resigned. If the agent for service of process has resigned and has not been replaced and the records of the Secretary of State do not disclose an address for its principal executive office, no action need be taken by the Secretary of State."

moving party has the burden of showing good cause for relief from a default or a default judgment. (*Davis* v. *Thayer* (1980) 113 Cal.App.3d 892, 904 [170 Cal.Rptr. 328].) Inasmuch as that burden was not sustained as to the corporate defendants, the trial court properly denied the motion to vacate default judgment as to them.

## III

### PROPRIETY OF DEFAULT JUDGMENT

Defendants contend the default judgment against defendant BHY Trucking, Inc., is improper and should be set aside because there was no proof establishing a cause of action against such defendant. They further argue that as an alternative to vacating the default judgment the trial court should have modified the judgment to reflect the fact that plaintiff retains possession of the trailer, and further should have deleted from the judgment the award of punitive damages because of inadequacy of the proof submitted by plaintiff on that issue. Such arguments are misdirected on this appeal. While a defendant moving for relief from a default judgment is required to serve and file a copy of his proposed answer with the motion (Code Civ. Proc., § 473.5, subd. (b)), hearing on the motion is not the occasion to try the merits of the action. (*Ludka* v. *Memory Magnetics International* (1972) 25 Cal.App.3d 316, 323 [101 Cal.Rptr. 615]; *First Small Business Inv. Co.* v. *Sistim, Inc.* (1970) 12 Cal.App.3d 645, 651 [90 Cal.Rptr. 798].) "The court's inquiry is limited to whether the . . . pleading contains a statement of facts sufficient to constitute a meritorious case, and the truth concerning the meritorious defense is not at issue. [Citations.]" (*Ludka* v. *Memory Magnetics International, supra*, 25 Cal.App.3d at pp. 323-324.)

### DISPOSITION

The appeal from the order denying defendants' motion for rehearing of their motion to vacate default judgment is dismissed. The order denying motion to vacate default judgment is reversed as to defendant Barrow with directions to set aside the default judgment as to Barrow and allow him to defend the action; in all other respects the order is affirmed. Neither side shall recover costs on appeal.

Thompson, J., and Johnson, J., concurred.